·FILED
·COURT OF APPEALS DIV I
STATE OF WASHINGTON

2017 MAY 15  AM 11: 53

# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | | |
|---|---|---|
| JOANNE KANDLER, | ) | No. 74253-1-I |
| Petitioner, | ) ) | |
| | ) | DIVISION ONE |
| v. | ) ) | |
| CITY OF KENT, a municipal corporation, | ) ) ) | PUBLISHED OPINION |
| | ) | |
| Respondent. | ) | FILED: May 15, 2017 |

SPEARMAN, J. — After Joanne Kandler's arrest for driving under the influence of marijuana, an officer asked Kandler to consent to a blood test. She agreed. Kandler later sought to suppress the blood test evidence on the grounds that the officer did not read her the warnings mandated by the implied consent statute, RCW 46.20.308, before obtaining her consent. But the implied consent statute in effect at the time of Kandler's arrest no longer mandated that the warnings be given before asking a driver to consent to a blood test. We affirm the admissibility of the evidence.

## FACTS

In January 2015, Kandler was arrested for driving under the influence of marijuana. An officer asked Kandler if she would consent to a voluntary blood

test. The officer informed Kandler that she had the right to refuse; evidence from the blood test could be used against her in legal proceedings; she had a right to consult with an attorney before giving consent; and consent was to be given knowingly, freely, and voluntarily. Kandler consented to the blood test.

Prior to trial, Kandler moved to suppress the blood test evidence on the grounds that police failed to administer the warnings required by the implied consent statute. The municipal court granted Kandler's motion. The superior court, however, reversed. The superior court ruled that by the implied consent statute's plain language, it applies only to breath tests and was inapplicable here, where a blood test was at issue. We granted discretionary review.

## DISCUSSION

We are asked to determine whether the superior court erred in denying Kandler's motion to suppress evidence from the warrantless blood test. Kandler contends that her consent to the blood test was not valid because officers failed to give the implied consent warnings set out in RCW 46.20.308. The State argues that the blood test was a valid search under the consent exception to the warrant requirement.

Warrantless searches are unconstitutional unless they fall within "a narrow set of exceptions" to the warrant requirement. State v. Tibbles, 169 Wn.2d 364, 369, 236 P.3d 885 (2010) (citing State v. Ringer, 100 Wn.2d 686, 701, 674 P.2d 1240 (1983)). These exceptions include consent, searches incident to valid arrest, and exigent circumstances. Id. A warrantless search is lawful under the

consent exception where the State establishes that consent was freely and voluntarily given. State v. Reichenbach, 153 Wn.2d 126, 131-32, 101 P.3d 80 (2004).

Breath tests conducted subsequent to an arrest for driving under the influence (DUI) are within the search incident to arrest exception to the warrant requirement. State v. Baird, 187 Wn.2d 210, 221, 386 P.3d 239 (2016). But, under Washington's implied consent statute, RCW 46.20.308, drivers are given the choice of consenting to or refusing a breath test, "with penalties attached for refusal." Id. at 224. The implied consent statute also grants drivers the right to warnings concerning the legal effect of consenting or refusing consent to a breath test. Id. at 223-24. The right to the warnings and the right to refuse the test are not constitutional but are granted as a matter of legislative grace. Id. at 224.

The issue in this case is whether the implied consent law in effect at the time of Kandler's arrest applied to blood tests. If it did, officers were required to provide the statutory warnings and, absent those warnings, Kandler's consent was not valid. State v. Avery, 103 Wn. App. 527, 535, 13 P.3d 226 (2000). If the statute did not apply to blood tests, the State had only the burden of showing that Kandler voluntarily consented to the test. Id. at 541.

The meaning of a statute is a question of law that we review de novo. State v. Morales, 173 Wn.2d 560, 567 n.3, 269 P.3d 263 (2012). In interpreting a statute, our primary concern is to discern the intent of the legislature. Id. at 567.

3

We begin with the statutory language. Id. Where a statute's plain language is unambiguous, we must give effect to that meaning. State v. Bostrum, 127 Wn.2d 580, 586-87, 902 P.2d 157 (1995).

In its original form, the implied consent statute, RCW 46.20.308, expressed the legislative determination that drivers in Washington "are deemed to have consented to a test of their breath or blood for the purpose of determining their breath or blood alcohol content." Id. at 583-84 (citing former RCW 46.20.308(1) (1995)) (emphasis added). Three amendments to the implied consent statute are relevant here.

As part of the 2012 initiative decriminalizing recreational marijuana, Washington voters amended the statute to include tetrahydrocannabinol (THC), the main active compound in marijuana. LAWS OF 2013, ch. 3, § 31. Under that amendment, the statute stated that drivers are "deemed to have given consent . . . to a test or tests of his or her breath or blood for the purpose of determining the alcohol concentration, THC concentration, or presence of any drug in his or her breath or blood." Id. (Emphasis added). The statute mandated warning that, if the test indicates that the driver's blood THC exceeds the legal limit, driving privileges will be revoked for at least one year. Id.

In April 2013, the United States Supreme Court held that the exigent circumstances exception to the warrant requirement does not automatically apply to a test of a driver's blood when a driver is under arrest for DUI. Missouri v. McNeely, 133 S. Ct. 1552, 1556, 185 L. Ed. 2d 696 (2013). In response to

McNeely, the Washington legislature amended the implied consent statute to remove references to blood tests. LAWS OF 2013, ch. 35, § 36; H.B. REP. ON ENGROSSED SECOND SUBSTITUTE H.B. 5912, 63rd Leg., 2d Spec. Sess. (Wash. 2013). Under the 2013 amendment, the statute retained the mandatory warning stating that, if the test indicates a concentration of THC in the driver's blood above the legal limit, driving privileges will be revoked. Id. In 2015, the legislature amended the statute to delete all references to THC. LAWS OF 2015, ch. 3, § 5.

In January 2015, when Kandler was arrested, the 2015 amendment had not yet taken effect. Kandler contends that the statute in effect at the time of her arrest applied to both breath and blood tests. This is so, she asserts, because the statute contained multiple references to THC and to blood. Kandler cites several provisions of the statute.

At the time of Kandler's arrest, the implied consent statute read:

> (1) Any person who operates a motor vehicle within this state is deemed to have given consent, subject to the provisions of RCW 46.61.506, to a <u>test or tests of his or her breath</u> for the purpose of determining <u>the alcohol concentration, THC concentration</u>, or presence of any drug <u>in his or her breath</u> if arrested for any offense where, at the time of the arrest, the arresting officer has reasonable grounds to believe the person had been driving or was in actual physical control of a motor vehicle while under the influence of intoxicating liquor or any drug... <u>Neither consent nor this section precludes a police officer from obtaining a search warrant for a person's breath or blood</u>.

Former RCW 46.20.308(1) (2013) (emphasis added). The statute stated that drivers impliedly consented to a <u>breath test</u> for the purpose of determining alcohol or THC concentration in <u>breath</u>. Former RCW 46.20.308(1). It referred to

a blood test only by stating that an officer may obtain a warrant to search a person's blood. Id.

The relevant warning provision read:

> (2) The test or tests of breath shall be administered at the direction of a law enforcement officer having reasonable grounds to believe the person to have been driving . . . while having alcohol or THC in a concentration in violation of RCW 46.61.503 in his or her system . . . The officer shall warn the driver, in substantially the following language, that:
>
> . . .
>
> (c) If the driver submits to the test and the test is administered, the driver's license, permit, or privilege to drive will be suspended, revoked, or denied for at least ninety days if:
>
> . . .
>
> (i) The driver is age twenty-one or over and the test indicates either that the alcohol concentration of the driver's breath is 0.08 or more or that the THC concentration of the driver's blood is 5.00 or more; or
> (ii) The driver is under age twenty-one and the test indicates either that the alcohol concentration of the driver's breath is 0.02 or more or that the THC concentration of the driver's blood is above 0.00; . . .

Former RCW 46.20.308(2) (emphasis added). The statutory warnings referred to THC and stated that driving privileges would be revoked if "the test" indicated an elevated blood THC level. Id. The statute identified the referenced "test" as "[t]he test or tests of breath." Id.

Kandler cites to three further provisions of former RCW 46.20.308. The statute's third subsection stated that, "[e]xcept as provided in this section, the test administered shall be of the breath only." Former RCW 46.20.308(3).The subsection then authorized a blood test in specific circumstances not applicable

here.[1] Id. And former RCW 46.20.308(5) and .308(7) both discussed procedural requirements applicable when "after arrest and after the other applicable requirements of this section have been satisfied, a test or tests of a person's blood or breath" indicated that the driver had an alcohol or THC concentration above the legal limit. Former RCW 46.20.308(5). The "other applicable requirements" specified that a blood test could only be administered pursuant to a warrant or under the specific circumstances listed in subsection three. Former RCW 46.20.308(1), .308(3).

Kandler is correct in asserting that former RCW 46.20.308 included references to THC and to blood. But the statute did not state that drivers impliedly consented to a blood test or mandate warnings before obtaining consent to a blood test. The statute unambiguously stated that drivers consented to a breath test and set out warnings that officers were required to give before administering a breath test.

---

[1] In its entirety, former RCW 46.20.308(3) read:

(3) Except as provided in this section, the test administered shall be of the breath only. If an individual is unconscious or is under arrest for the crime of felony driving while under the influence of intoxicating liquor or drugs under RCW 46.61.502(6), felony physical control of a motor vehicle while under the influence of intoxicating liquor or any drug under RCW 46.61.504(6), vehicular homicide as provided in RCW 46.61.520, or vehicular assault as provided in RCW 46.61.522, or if an individual is under arrest for the crime of driving while under the influence of intoxicating liquor or drugs as provided in RCW 46.61.502, which arrest results from an accident in which there has been serious bodily injury to another person, a breath or blood test may be administered without the consent of the individual so arrested pursuant to a search warrant, a valid waiver of the warrant requirement, or when exigent circumstances exist.

By including warnings concerning the consequences of driving with a blood THC concentration above the statutory limit, the statute implied, incorrectly, that a breath test could measure the concentration of THC in a person's blood. See State v. Murray, 187 Wn.2d 115, 118, 384 P.3d 1150 (2016) (stating that the statute was amended in 2015 to avoid suggesting that "the current breath test will measure something it cannot"). See also, S.B. REP. on SECOND ENGROSSED SECOND SUBSTITUTE H.B. 1276, 64th Leg., 2d Spec. Sess. (Wash 2015) (prior to 2015 amendment, drivers impliedly consented to a breath test for the purposes of determining level of THC but breath test cannot detect THC). But this faulty understanding of what a breath test could measure is not relevant here, where officers did not seek to administer a breath test.

Prior to the 2013 amendment, Washington's implied consent law mandated warnings before administering a test of a driver's blood. Had Kandler's offense taken place before the 2013 amendment, she would have had a statutory right to the warnings set out in the statute. But this statutory right was eliminated in the 2013 amendment. See State v. Sosa, No. 33859-2-III, 2017 WL 1023994, at *3 (Wash. Ct. App. Mar. 16, 2017) ("Once the 2013 amendment eliminated references to blood testing, the right to advice in this context was also removed."). The statute in effect at the time of Kandler's arrest expressly applied to breath tests. The superior court did not err in ruling that the statute was inapplicable to Kandler's blood test.

However, Kandler argues that her case is analogous to Avery, 103 Wn. App. 527. In that case, a driver was arrested for hit and run. Id. at 531. Officers sought a blood test without reading the driver the implied consent warnings, although the implied consent statute in effect at that time applied to both breath and blood tests. Id. at 531, 533. The driver consented to a blood test but later moved to suppress the evidence. Id. at 531. We held that, "where the implied consent statute applies, the State cannot avoid complying with the statute by obtaining a drivers 'voluntary' consent to a blood test." Id. at 535. But because the statute did not apply in the particular circumstances of that case, we upheld the admissibility of the blood test evidence. Id. at 541.

Avery is of no help to Kandler. At the time Avery was decided, the implied consent statute stated that drivers were "deemed to have given consent . . . to a test or tests of his or her breath or blood . . . ." Id. at 533 (quoting former RCW 46.20.308(1)(1996)). But at the time of Kandler's arrest, the statute did not apply to blood tests. As the Avery court concluded, "where the implied consent statute does not apply, the suspect may voluntarily consent to a blood test." Id. at 541 (citing State v. Rivard, 131 Wn.2d 63, 77, 929 P.2d 413 (1977)).

Because the implied consent statute did not apply to Kandler's blood test, evidence from the test was admissible if the State showed that the test was within the consent exception to the warrant requirement. Consent to a search is valid if it is voluntarily given. Reichenbach, 153 Wn.2d at 132. Kandler does not dispute that she consented to the test and she makes no argument that her

9

consent was not voluntary. The superior court did not err in reversing the order granting Kandler's motion to suppress the evidence.

Affirmed.

WE CONCUR:

Spearman, J.

Mann, J.

Trickey, ACJ